United States District Court
Southern District of Texas
**ENTERED**
September 29, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **ISMAEL RINCON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:24-CV-00050** |
| | § | |
| **SANTIAGO MARTINEZ III, *et al.*,** | § | |
| **Defendants.** | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Rule 56 Motion for Summary Judgment, (Dkt. No. 58), together with an Appendix, (Dkt. No. 59), and a Supplemental Attachment, (Dkt. No. 60), in support of their motion for summary judgment. Defendants move for summary judgment based on qualified immunity on all of Plaintiff's remaining claims. (Dkt. No. 58 at 1). Plaintiff did not respond to Defendants' motion for summary judgment.[1] For the reasons and in the manner set forth below, Defendants' Motion for Summary Judgment is **GRANTED.**

## I. BACKGROUND[2]

This case arises from an incident in which Plaintiff Ismael Rincon interacted with City of Laredo police officers on March 10, 2022. (Dkt. No. 59 at 6, 10).[3] On that date, a single vehicle rollover accident occurred on the 5700 block of US Highway 83 in Laredo, Texas, at approximately 9:00 PM. (*Id.* at 9). The crash occurred when the vehicle lost

---

[1] The Court notes that Rincon is no stranger to civil litigation in the Southern District of Texas, and that he has been admonished for failing to oppose summary judgment motions in the past. *Rincon v. Ibarra*, 5:23-cv-00017 (S.D. Tex. Nov. 13, 2025) (Dkt. No. 132). U.S. District Judge Garcia Marmolejo previously warned Rincon that failing to meet deadlines or file required briefing—the issues again present in the instant case—"may result in consequences." *Id.* Rincon also initially failed to file a response to Defendant City of Laredo's Motion to Dismiss, (Dkt. No. 12), in the present case and was admonished by the Court to diligently comply with all relevant rules and procedures in this Court. (Dkt. No. 26).

[2] The facts set forth in this section are taken from Defendants' summary judgment evidence, which are uncontroverted as the result of Rincon's failure to file a response to the motion for summary judgment. "The court may accept as undisputed the movant's version of the facts and grant the motion … when the movant has made a *prima facie* showing of entitlement to summary judgment." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 740 (S.D. Tex. 2013) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 173–174 (5th Cir. 1988).

[3] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

control and rolled over into a grass field next to the highway. (*Id.*). It was a major accident "that resulted in injuries of two adults and three children." (*Id.* at 14). City of Laredo police officers responded to the scene of the accident, including Sergeant Eduardo Flores, Sergeant Sergio Mendiola, Sergeant Victor Vicharelli, Investigator Pedro Escamilla, Officer Gerardo Montemayor, Officer Ricardo Rodriguez, and Officer Lopez.[4] (*Id.* at 6). The officers "were investigating a larger crash scene area than [they] normally do" because of where the vehicle came to a stop. (*Id.*). Officers used floodlights to protect themselves and to conduct the investigation because the accident occurred at night. (*Id.* at 15, 19). The northbound lane of US Highway 83 was also closed to protect the safety of the officers conducting the investigation. (*Id.* at 19).

Rincon parked his automobile on farm road in the area of the accident investigation. (Dkt. No. 59 at 29). Rincon began recording the crashed vehicle and the officers from a close proximity. (Dkt. Nos. 59 at 6, 10, 47; 60 at 00:53–03:42).

Officer Martinez noticed Rincon recording the scene while conducting his investigation. (Dkt. No. 59 at 6). Officer Martinez is a member of the Crash Team Investigation Unit in charge of assisting with motor vehicle accident investigations. (*Id.* at 5). Officer Martinez believed Rincon's proximity to the investigation and "his recording with a bright light" interfered with the Investigation Unit's ability to obtain measurements and photographs of the scene. (*Id.* at 6). Sergeant Flores agreed, stating Rincon's "proximity to the investigation crash scene along with his use of bright light interfered with [the] evidence gathering investigation." (*Id.* at 10). Officer Martinez ordered the other officers to stop the investigation until Rincon was moved farther away from the crash scene. (*Id.* at 6).

Sergeant Flores and Officer Lopez then approached Rincon to ask that he move further from the crash scene. (*Id.* at 6, 10). Sergeant Flores spoke to Rincon, telling him the area around the crash scene was closed off and that he had to move. (Dkt. No. 60 at 3:56–4:01). Sergeant Flores told Rincon that he may continue to record the crash scene from a farther distance. (*Id.* at 4:01–4:04). Rincon refused to move from where he was filming, stating that the area had not been taped off. (*Id.* at 4:04–4:12). Sergeant Flores

[4] The summary judgment evidence produced by Defendants does not identify this officer's first name.

continued asking Rincon to move farther from the scene, telling him he could continue to record from the other side of the patrol car, to which Rincon refused, insisting repeatedly "that's not the way it works." (*Id.* at 4:30–4:52). Rincon eventually asked Sergeant Flores what would happen if he did not move, to which Sergeant Flores responded that he would be arrested for interference. (*Id.* at 4:52–5:17).

Rincon began slowly walking away from the scene of the crash in the direction of the patrol car identified by Sergeant Flores. (*Id.* at 5:18–5:34). When Rincon reached the patrol car, he immediately asked Sergeant Flores, "You will arrest me, right?" (*Id.* at 5:34–5:36). Sergeant Flores responded, "You are behind the police car, so you are fine right there," gesturing toward the patrol car. (*Id.* at 5:36–5:40). Within two seconds of complying with Sergeant Flores' instruction to stand behind the patrol car, Rincon began walking diagonally forward and right, once again in front of the patrol car and out of compliance. (*Id.* at 5:40–5:45). Another officer then said, "arrest this guy. He's interfering with our investigation." (*Id.* at 5:44–5:46). Sergeant Flores responded, "I will in a minute if he doesn't get behind this line." (*Id.* at 5:46–5:49). Rincon continued walking forward and immediately asked, "Who was that making the threat?" (*Id.* at 5:49–5:55). Sergeant Flores responded "don't worry about it. See that patrol car over there." (*Id.* at 5:53–5:58).

Officer Martinez then approached Rincon and Sergeant Flores, introduced himself and instructed Rincon to put his hands behind his back. (*Id.* at 5:57–6:01). Without putting his hands behind his back, Rincon responded, "Oh it's you. [Sergeant Flores] told me behind the unit." (*Id.* at 6:01–6:06). Officer Martinez instructed Rincon to put his hands behind his back again. (*Id.* at 6:05–6:07). Again, Rincon did not comply, but instead responded "Who has higher rank?" (*Id.* at 6:07–6:10). Officer Martinez instructed Rincon once again to put his hands behind his back and Rincon did not comply. (*Id.* at 6:08–6:11). Officer Martinez reached for Rincon's hands to arrest him, but Rincon moved away and attempted to block Officer Martinez from arresting him. (Dkt. No. 59 at 6, 29). At this point, Officer Martinez used a "take down maneuver" to arrest Rincon. (*Id.*; Dkt. No. 60 at 6:13–6:20). In his sworn statement, Officer Martinez states that he felt it necessary to use the maneuver because Rincon actively resisted arrest and possessed a handgun. (Dkt. No. 59 at 6–7). The investigation into the car accident then resumed after Rincon's arrest.

(*Id.* at 7, 11, 16).

After Rincon was placed under arrest, EMS came to the scene to assess him for injuries. (Dkt. No. 59 at 7). EMS evaluated and released Rincon after finding no injuries. (*Id.*). Rincon was "then transported to the Laredo Police Department for booking procedures by Officer Cesar Serna and subsequently booked into the Webb County Jail." (*Id.* at 7). Rincon was charged with resisting arrest and interference with public duties. (*Id.* at 22; Tex. Penal Code §§ 38.15(a), 39.03(b)). He was subsequently released on bond. (Dkt. No. 59 at 28, 49). The Webb County District Attorney's Office declined to prosecute either charge on or about August 27, 2023. (*Id.* at 49).

Rincon filed his complaint in this Court on March 11, 2024. (Dkt. No. 1). Defendants filed a motion for summary judgment on October 30, 2025. (Dkt. No. 58). In support of their motion for summary judgment, Defendants also filed an Appendix, (Dkt. No. 59), and a Supplemental Attachment, (Dkt. No. 60). Rincon did not file a response.

## II. APPLICABLE LAW

### A. Pro Se Litigants

Pro se litigants' pleadings are construed liberally and held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *accord Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013); *Butler v. Porter*, 999 F.3d 287, 292 (5th Cir. 2021). However, even pro se litigants "must still brief the issues and reasonably comply" with the relevant rules of civil procedure. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)); *see also Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307, 309 n.10 (5th Cir. 2017) (citing *United States v. Jenkins*, 780 F.2d 518, 520 (5th Cir. 1986)).

### B. Summary Judgment Legal Standard

A court must grant summary judgment when there is no genuine dispute of material fact. Fed. R. Civ. Pro. 56(a). A genuine dispute of material fact exists if the evidence would permit "a reasonable jury" to find for the nonmovant. *Austin v. Kroger Tex., LP*, 864 F.3d 326, 328 (5th Cir. 2017). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Talasek v. Nat'l Oilwell*

*Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). To carry its burden, the movant must identify specific excerpts of pleadings, depositions, interrogatory answers, admissions, or affidavits proving the absence of a genuine fact dispute. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322. When deciding a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019).

**C. Qualified Immunity**

Qualified immunity shields government officials from liability under 42 U.S.C. § 1983 unless their conduct violates a constitutional right that was clearly established at the time of the alleged misconduct. *Zorn v. Linton*, 607 U.S. 568, 571 (2026); *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Qualified immunity applies regardless of whether the government official's error was a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 236. Qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. Courts apply a two-step analysis to determine whether qualified immunity applies: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was clearly established such that a reasonable official would have known the conduct was unlawful. *Mace*, 333 F.3d at 623–24 (citation omitted). Courts may address these prongs in any order. *Pearson*, 555 U.S. at 236.

"A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Zorn*, 607 U.S. at 572 (citation modified). "A right is not clearly established if existing precedent does not place the constitutional question beyond debate." *Id.* "To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances ... was held to have violated' the Constitution." *Id.* (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (per curiam)). "The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id.* (quoting *District of*

*Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). Officials "receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct." *Id.*

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). "A plaintiff must clear a significant hurdle to defeat qualified immunity." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). "To trigger the qualified immunity framework, however, the government official must satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Watson v. Cook*, No. CV H-23-1128, 2025 WL 2208852, at *3 (S.D. Tex. Aug. 4, 2025) (quoting *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022)) (internal quotations omitted).

**D. Section 1983 Claims**

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. In a Section 1983 suit, law enforcement officers may be sued in their individual and/or official capacities. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). A person may assert a Section 1983 claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates that person's constitutional rights. 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of law. *Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016).

## III. DISCUSSION

Defendants move for summary judgment on Rincon's Section 1983 claims based on qualified immunity. (Dkt. No. 58 at 1). As noted earlier, Rincon did not respond to Defendants' motion for summary judgment. The failure to file a timely response to a motion would normally be taken as a representation of no opposition. L.R. S.D. Tex. 7.4. However, summary judgment "cannot be granted by default even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56(e) advisory committee's note. The Court may, however, "accept as undisputed the movant's version of the facts and grant

the motion … when the movant has made a prima facie showing of entitlement to summary judgment." *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 740 (S.D. Tex. 2013).[5]

The Court will first address Rincon's Section 1983 claim against Officer Martinez for interference with his right to record police officers in public. (Dkt. No. 1 at 8). Second, the Court will address Rincon's Section 1983 retaliation claim against Officer Martinez for recording in public. (*Id.* at 8). Third, the Court will address Rincon's Section 1983 unreasonable search and seizure claim against Officer Martinez, Sergeant Flores, Sergeant Vicharelli, and Sergeant Mendiola. (*Id.* at 9). Fourth, the Court will address Rincon's Section 1983 retaliation claim against Officer Martinez for exercising the right to bear arms. (*Id.* at 10).

**A. Claim I: Section 1983 Interference Claim Against Officer Martinez**

Rincon first claims that Officer Martinez interfered with his right to record in public in violation of his First Amendment rights. He alleges that Officer Martinez knew or should have known that Rincon's recording of the car accident was not a crime. (Dkt. No. 1 at 8). Additionally, he alleges that Officer Martinez knew or should have known that he was standing at a distance approved by Sergeant Flores and should not have been prevented from recording in public. (*Id.*).

Defendants move for summary judgment on Rincon's interference claim against Officer Martinez, asserting qualified immunity. (Dkt. No. 58 at 16). Defendants contend that they are entitled to the protection of qualified immunity because Rincon did not sustain a constitutional deprivation for interference with recording in public under the First Amendment. (*Id.*). In the absence of a response from Rincon, proceeding pro se, the Court will examine whether Rincon had a clearly established right to record this police investigation. The Court finds that Officer Martinez's alleged conduct does not violate a

[5] "A plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Barker v. Norman*, 651 F.2d 1107, 1114–15 (5th Cir. 1981)). Nevertheless, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.*; *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

clearly established right for the purposes of qualified immunity.

In *Turner v. Lieutenant Driver*, the Fifth Circuit narrowly established the right to record police officers in public. 848 F.3d 678, 686 (5th Cir. 2017). Phillip Turner was video recording a police station from a public sidewalk across the street when he was approached by two officers and asked to provide identification. *Id.* at 683. Turner refused to comply and he was handcuffed and placed in a patrol car. *Id.* After a supervisor arrived, he was ultimately released. *Id.* at 684. Turner brought Section 1983 claims against the officers and the city for violations of his First and Fourth Amendment rights. *Id.* The district court granted the defendants' motions to dismiss on the basis of qualified immunity for the First Amendment claims. *Id.* On appeal, the Fifth Circuit affirmed the lower court's holding that, at the time of Turner's conduct, the right to record police was not yet clearly established. *Id.* at 687. The Fifth Circuit went further to find that the right to record police was henceforth clearly established. *Id.* at 690.

Turner provides two relevant rules. First, *Turner* affirms that "the Supreme Court has 'repeatedly' instructed courts 'not to define clearly established law at a high level of generality.'" *Id.* at 686. Second, *Turner* acknowledged a clearly established "First Amendment right to record the police . . . subject only to reasonable time, place, and manner restrictions." *Id.*

Rincon was in fact recording police, but his situation is distinguishable from *Turner*. In *Turner*, the plaintiff was recording a police station from a public sidewalk across the street and refused to identify himself. *Id.* at 694. In the instant case, Rincon was recording police officers on the side of a highway where there is no public sidewalk. (Dkt. No. 60 at 00:53–03:42). Rincon argued with police officers but still moved further away from the accident scene, complying with Sergeant Flores's instructions for two seconds before once again walking forward out of compliance. (*Id.* at 5:18–5:45). Soon after, Officer Martinez detained Rincon, stating that he was interfering with the investigation and being uncooperative. (*Id.* at 5:38–5:43; Dkt. No. 59 at 6–7).

In general, "[q]ualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotations omitted). The Court may not define the right to record police at too high a

level of generality. *Zorn*, 607 U.S. at 572 ("The relevant precedent must define the right with a high degree of specificity") (citation modified). *Turner* did not involve recording an active investigation on the side of a highway. This distinction is significant. Rincon did not present, and the Court is not aware of, other controlling authority that clearly establishes the right as Rincon suggests. Therefore, Officer Martinez is entitled to qualified immunity as to Rincon's First Amendment interference claim.

Assuming for the sake of argument that the clearly established right to record police should be defined more broadly to include Rincon's conduct, Defendants are still entitled to the protection of qualified immunity because the restriction placed on Rincon's recording was reasonable in time, place, and manner. Qualified immunity protects the conduct of the officers so long as their actions placed only "reasonable time, place, and manner restrictions" on a plaintiff's right. *Turner*, 848 F.3d at 686. Officers asked Rincon to step away from an active police investigation on the side of a highway, just behind the patrol car. It is reasonable to restrict public access to an active investigation on the side of a highway. The requests made by Defendants for Rincon to step away from the scene of the accident are reasonable time, place, and manner restrictions on any First Amendment right Rincon may have to record an active police investigation on the side of the highway. As such, Defendants are also entitled to the protection of qualified immunity on the basis that the restrictions placed on Rincon's alleged First Amendment rights were reasonable in time, place, and manner. Nevertheless, Rincon has not provided, and the Court has not independently identified, any precedent clearly establishing the right to record an active police investigation into a car accident on the side of the highway. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** on Claim I.

### B. Claim II: Section 1983 First Amendment Retaliation Claim Against Officer Martinez

Rincon next claims that Officer Martinez retaliated against him for exercising his right to record in public. Rincon claims that Officer Martinez "was acquainted with [him] and knew of his YouTube channel and his activities as a videographer." (Dkt. No. 1 at 8). Because of their familiarity, Rincon alleges Officer Martinez used the encounter to retaliate against him for "exercising this constitutionally protected right of videorecording in public." (*Id.*). Defendants move for summary judgment, asserting

qualified immunity. (Dkt. No. 58 at 16).

"For a First Amendment retaliation claim, a plaintiff must demonstrate: (1) [he] was engaged in constitutionally protected activity; (2) the officer's action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against [his] exercise of constitutionally protected activity." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

*1. Rincon Fails to Establish a Retaliation Claim*

After liberally construing the pleadings and summary judgment evidence before the Court, Officer Martinez has established that he is entitled to summary judgment on Rincon's retaliation claim. Rincon pleads that Officer Martinez's actions caused him injury. (Dkt. No. 1 at 9). The Court construes this pleading as Rincon stating he suffered injuries that would chill the speech of a person of ordinary firmness. Examples of such an injury include arrest, the use of force, and detention following the exercise of protected speech. *See Brooks v. City of West Point*, 639 F. App'x 986, 989 (5th Cir. 2016) ("[A]rrest for cursing a police officer was an injury that would chill the speech of a person of ordinary firmness."); *Ybarra v. Davis,* 489 F. Supp. 3d 624, 630-33 (W.D. Tex. 2020) (finding plaintiff's retaliation claim survived motion to dismiss after officer threw plaintiff to the ground by his neck after plaintiff told officer he illegally entered plaintiff's property).

Here, viewing the evidence in the light most favorable to Rincon, a jury could conclude that Rincon suffered an injury that would chill the speech of a person of ordinary firmness when he was arrested by Officer Martinez after recording a video of a police investigation. *Brooks*, 489 F. App'x at 989. However, in similar circumstances, one court has reasoned that:

> [A] plaintiff must show that any retaliatory animus was the "but-for" cause of her injury, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." So, when a plaintiff

> asserts a retaliatory-arrest claim, [he] "must first establish the absence of probable cause, and then demonstrate that the retaliation was a substantial or motivating factor behind the arrest." If an officer has probable cause to seize an individual, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." Just so, "even where a citizen believes that he has been subject to a retaliatory detention or arrest."

*Zinter v. Salvaggio*, 610 F. Supp. 3d 919, 957 (W.D. Tex. 2022) (citations omitted). The Court adopts the reasoning of its sister court.

In the undisputed summary judgment evidence, Officer Martinez demonstrates a prima facie entitlement to summary judgment on the First Amendment retaliation claim. The evidence establishes that Officer Martinez had probable cause to arrest Rincon. In his sworn statement, Officer Martinez states that his actions against Rincon were motivated by Rincon's active interference with a live investigation. (Dkt. No. 59 at 6, 10). Anyone who intentionally disrupts, impedes, or interferes with an officer performing official duties may face criminal charges. Tex. Penal Code § 38.15(a). The Court may accept as undisputed Defendants version of the facts indicating that Martinez's actions were motivated solely by Rincon's interference with the police investigation.

Officer Martinez has produced evidence showing (1) that Rincon's arrest was supported by probable cause, and (2) that a reasonable police officer could have believed probable cause existed under the circumstances present in this case. *Keenan*, 290 F.3d at 262. The body camera video demonstrates that Rincon initially complied with Sergeant Flores's instructions, though he continuously protested the need to comply. (Dkt. No. 60 at 5:18–5:42). Within two seconds, Rincon began walking in front of the patrol car again, almost immediately falling back out of compliance with Sergeant Flores's instruction to stand behind the patrol car. (*Id.* at 5:40–5:50). Rincon continued to protest the need to comply with Sergeant Flores's instructions. (*Id.*). Officer Martinez then announced himself and arrested Rincon for interference with the live investigation. (*Id.* at 5:40–6:20). Rincon challenged Officer Martinez's seniority and refused to put his hands behind his back. (*Id.*). Officer Martinez separately concluded that Rincon continued interfering with the investigation of the car accident. (*Id.*). The summary judgment evidence establishes both that Rincon's arrest was supported by probable cause and that a reasonable officer in Officer Martinez's position could have believed probable cause

existed to arrest Rincon for interference. The Court's finding that Officer Martinez had probable cause to arrest Rincon defeats the element of causation required for a First Amendment retaliation claim. As such, Officer Martinez is entitled to summary judgment on this claim.

*2. Officer Martinez is Entitled to Qualified Immunity*

Even if the Court were to find that a genuine issue of disputed fact existed for Rincon's First Amendment retaliation claim, Officer Martinez is still entitled to the protection of qualified immunity. *See Carswell v. Camp*, 54 F.4th 307, 322 (5th Cir. 2022) (holding that district courts must grant motions to dismiss when pleadings cannot overcome qualified immunity). As explained in the Court's analysis of Claim I, Officer Martinez is entitled to qualified immunity unless Rincon establishes that "(1) [Officer Martinez] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan*, 659 F.3d at 370. For the same reasons that Rincon cannot show that Officer Martinez violated a clearly established right in Claim I, he cannot show that Officer Martinez violated a clearly established right in Claim II. Constitutional claims for First Amendment retaliation cannot overcome qualified immunity when there is not a clearly established right in question. *See Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (finding qualified immunity defeats First Amendment retaliation claim because there is no clearly established right to refuse to answer an officer's questions during a *Terry* stop).

In *Alexander*, the Fifth Circuit held that officers were entitled to qualified immunity on a First Amendment retaliation claim because the plaintiff could not show that officers retaliated based on a clearly established right. *Id.* Officers pulled Alexander over for a traffic stop in a hotel parking lot. *Id.* at 301. During the traffic stop, Alexander told the officer that he would not answer any questions. *Id.* at 302. The officer on the scene called for backup and later asked Alexander to exit his vehicle. *Id.* When Alexander refused, the officers pulled him from the car and used force to detain him. *Id.* After he was handcuffed, the officer asked if he was willing to talk. *Id.* Alexander refused again, using an expletive in his response. *Id.* Officers then arrested him based on a violation of a Texas disorderly conduct statute. *Id.* Alexander brought claims under Section 1983 and the Texas Constitution, including a First Amendment retaliation claim. *Id.* He argued

that officers retaliated against him for using an expletive and refusing to answer the officer's questions by remaining silent. *Id.* at 308. The district court properly dismissed the retaliation claim because officers had already removed him from the vehicle when the expletive was used. *Id.* Furthermore, the court held that "Alexander's claim on this point cannot overcome the officers' qualified immunity, because 'it was not clearly established that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop.'" *Id.* (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011)).

Here, Rincon claims Officer Martinez retaliated against him for recording a car accident, which he claims is a clearly established First Amendment right. As explained in the Court's analysis of Claim I, clearly established rights are defined at a more specific level than suggested by Rincon. *See Henderson*, 51 F.4th at 132 (holding that clearly established rights are limited by the specific facts of the case that establishes the right). There is no clearly established right to interfere with an ongoing police investigation by recording a car accident on the side of a highway. Further, even if Rincon had a clearly established right to record the police in this manner, he is still subject to reasonable restrictions on the time, place, and manner of recording. *Turner*, 848 F.3d at 686. Rincon has failed to establish a genuine dispute of material fact, so Officer Martinez is entitled to the protection of qualified immunity. Defendants' motion for summary judgment is **GRANTED** on Claim II.

### C. Claim III: Section 1983 Unreasonable Search and Seizure Claim Against Officer Martinez, Sergeant Flores, and Sergeant Mendiola, and Failure to Intervene Against Sergeant Vicharelli

Rincon next claims that Officer Martinez, Sergeant Flores, and Sergeant Mendiola committed an unreasonable search and seizure. Rincon claims the officers "knew or should have known that they had no reasonable suspicion nor probable cause justifying a detention or an arrest of [him] yet they assaulted and battered [him] and effected an arrest anyway." (Dkt. No. 1 at 9). Further, Rincon claims that Sergeant Vicharelli failed to intervene and prevent the violation of his Fourth Amendment rights. (*Id.*). Rincon claims that, as a "direct and proximate consequence of the acts of" the officers, he has suffered injury and is entitled to recover damages. (*Id.* at 10). Based on Rincon's alleged injuries, the Court construes Rincon's unreasonable search and seizure claim to include

a claim for the use of excessive force. Defendants move for summary judgment on Rincon's claim against Officer Martinez, Sergeant Flores, Sergeant Mendiola, and Sergeant Vicharelli, asserting qualified immunity. (Dkt. No. 58 at 16).

The Court will separately address Rincon's claims under 42 U.S.C. § 1983 for unreasonable search and seizure, and failure to intervene. Then, the Court will address Rincon's excessive force claim. Defendants move for summary judgment on each of these claims.

*1. Rincon Fails to Demonstrate Unreasonable Search and Seizure and Failure to Intervene*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A warrantless arrest is a reasonable seizure "if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (citation omitted). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Here, the Defendants had probable cause to arrest Rincon. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). Probable cause arose when Rincon failed to comply with officers after he was told he was interfering with an active police investigation. (Dkt. No. 60 at 5:38–5:43, 6:03–6:20). Rincon, under protest, walked backward behind the patrol car identified by Sergeant Flores as an acceptable place to film the investigation, but he began walking forward again with his recording device within two seconds of complying with Sergeant Flores's directive. (Dkt. No. 60 at 5:20–5:45). Rincon ultimately did not comply with Sergeant Flores's directive. (*Id.* at 5:20–6:20). Officer Martinez states that Rincon's presence close to the scene of the accident while recording with a bright light interfered with the active police investigation. (Dkt. No. 59 at 6). Rincon submitted no evidence to contradict this assessment. Interfering with a police investigation provides the factual evidence needed to establish probable cause for an arrest. Tex. Penal Code § 38.15(a). The seizure of Rincon was reasonable because the arrest was supported by

probable cause. *See Glenn v. City of Tyler*, 242 F.3d 307, 313–14 (5th Cir. 2001) (explaining that without allegations of an arrest conducted in an "extraordinary manner," "the government's interest in enforcing its laws outweigh the suspect's privacy interest and arrest of the suspect is reasonable") (citation modified). Therefore, Officer Martinez, Sergeant Flores, and Sergeant Mendiola did not commit an unreasonable seizure or false arrest.

Additionally, because the other Defendants had probable cause, Rincon's claim against Sergeant Vicharelli for failure to intervene also fails. A failure to intervene claim is not viable where the plaintiff has failed to establish an underlying constitutional violation. *See Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994) (identifying that a failure to intervene claim requires both a person acting under color of law and a deprivation of a person's rights, privileges, or immunities secured by the Constitution or laws of the United States). An arrest supported by probable cause is not a violation of Rincon's rights, privileges, or immunities. Rincon has failed to establish a genuine dispute of material fact as to the unreasonable seizure, false arrest, and failure to intervene claims. Defendants are entitled to summary judgment on Rincon's claim of unreasonable search and seizure and failure to intervene.

*2. Rincon Fails to Demonstrate Use of Excessive Force*

"To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that [he] was seized." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The use of force rises to the level of a seizure in violation of the Fourth Amendment only if the force used was "objectively unreasonable in light of the facts and circumstances" confronting the officer. *Id.* at 397. Evaluating an excessive force claim is "necessarily fact-intensive" because officers make split-second judgments in circumstances that are "tense, uncertain, and rapidly evolving." *Darden v. City of Fort Worth*, 880 F.3d 722, 728–29 (5th Cir. 2018); *Graham*, 490 U.S. at 396–97.

Next, a plaintiff must show he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was

objectively unreasonable." *Flores*, 381 F.3d at 396; *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015). Factors that inform the need for force include "the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Here, the undisputed summary judgment evidence fails to establish a genuine issue of material fact as to all three elements required in an excessive-force claim. As to the first element, Rincon fails to demonstrate he had sustained an injury. The Fifth Circuit requires plaintiffs asserting claims for excessive use of force to have suffered an injury, though the injury need not be significant. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). "The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Id.* at 314. Where a plaintiff cannot demonstrate they suffered more than a de minimis injury from the use of force, the force applied is not excessive. *Francis v. Cnty.*, No. CV H-14-2943, 2016 WL 6662275, at *13 (S.D. Tex. Nov. 10, 2016), *aff'd sub nom., Francis v. Garcia*, 702 F. App'x 218 (5th Cir. 2017). EMS evaluated Rincon and determined he had sustained no injuries. (Dkt. No. 59 at 7). Officer Martinez's declaration contradicts Rincon's pleadings, which contains broad and conclusory statements unsupported by evidence to establish the actual extent of any injury alleged by Rincon as a result of Officer Martinez's "take down maneuver." (Dkt. No. 1 at 7; Dkt. No. 59 at 6-7). There is no summary judgment evidence showing that Rincon suffered more than a de minimis injury from Officer Martinez's use of force.

As to the second and third elements, Rincon fails to show either that the force used was excessive or that the force was objectively unreasonable. Rincon's presence caused interference with an active police investigation of a car accident (Dkt. No. 59 at 7, 11, 16). After Sergeant Flores instructed Rincon to move farther away from the crash scene, Officer Martinez informed Rincon that he was under arrest for interfering with the investigation. (Dkt. No. 60 at 5:38–5:43). Rincon refused to put his hands behind his back, moved away from Officer Martinez, attempted to block Officer Martinez from grabbing his hands, and challenged Officer Martinez's authority to arrest him, asking "who has higher rank?" (Dkt. Nos. 59 at 6, 29; 60 at 5:55–6:11). At this point, Officer Martinez used a "take down maneuver" to arrest Rincon. (Dkt. No. 60 at 6:03–6:20; Dkt. No. 59 at 6–7).

Officer Martinez states that he felt it necessary to use the maneuver on Rincon because he actively resisted arrest. (Dkt. No. 59 at 6–7). "This tactical technique is also a reasonable use of force permitted under the Laredo Police Department Use of Force Policies when a suspect poses an immediate threat to the safety of officers and when the suspect is actively resisting or evading arrest." (*Id.* at 7). Rincon submitted no evidence to contradict this assessment.

In evaluating whether the use of force was excessive, the Court also considers that there is no summary judgment evidence to support that Rincon suffered any significant, or more than de minimis, injury caused by force actually used. Even if Rincon created a fact issue as to whether he sustained the injuries he claims, he still fails to demonstrate that the use of force was objectively unreasonable. At their core, excessive force claims typically involve an evaluation of the "totality of the circumstances" to determine if the use of force was "objectively unreasonable." *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) (citation and internal quotations omitted). Using a tactical technique permitted under the policies of the Laredo Police Department for a suspect resisting arrest does not rise to the level of objective unreasonableness.

Finally, even if Rincon could establish a genuine issue of disputed fact as to his excessive force claim, he has not pointed to any case law showing a violation of a clearly established right. This Court is not aware of any case establishing a clearly established right to record an active police investigation on the side of the highway outside of the place specified by police officers at the scene. "Excessive force incidents are highly fact-specific and without cases squarely on point, officers receive the protection of qualified immunity." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 n.1 (5th Cir. 2009). Additionally, Rincon's claim against Sergeant Vicharelli for failure to intervene also fails because Officer Martinez, Sergeant Flores, and Sergeant Mendiola are entitled to qualified immunity. Rincon has failed to establish a genuine dispute of material fact with regard to his excessive force claim. Officer Martinez, Sergeant Flores, Sergeant Mendiola, and Sergeant Vicharelli are entitled to summary judgment. Defendants' motion for summary judgment is **GRANTED** on Claim III.

**D. Claim IV: Section 1983 Retaliation for Right to Bear Arms Claim Against Officer Martinez**

Rincon next claims that Martinez retaliated against him based on the exercise of

his Second Amendment rights. He asserts that Officer Martinez knew or should have known that openly carrying a handgun in public is constitutionally protected under the circumstances and not a crime. (Dkt. No. 1 at 10). Defendants move for summary judgment on Rincon's claim asserting qualified immunity. (Dkt. No. 58 at 16).

Rincon correctly states that the Second Amendment provides him with a right to bear arms, but this right is not unlimited. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 597 U.S. 1, 17 (2022). When the government regulates conduct under the Second Amendment, the government must demonstrate "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Indeed, an individual's Second Amendment rights are subject to "limited, narrowly tailored specific exceptions or restrictions for particular cases." *United States v. Emerson*, 270 F.3d 203, 260–61 (5th Cir. 2001).

As this Court discussed in analyzing Claim II, a retaliatory detention claim requires Rincon to prove three elements: (1) he was engaged in constitutionally protected activity; (2) the officer's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against his exercise of constitutionally protected activity. *Keenan,* 290 F.3d at 252; *Batyukova,* 994 F.3d at 730.

As explained in the context of a First Amendment retaliation claim, above, Rincon must demonstrate that there is a genuine issue of disputed fact (1) that the officers' arrests were unsupported by probable cause and (2) that "no reasonable police officer could have believed that probable cause existed." *Keenan*, 290 F.3d at 262. Here, the Court similarly finds that Rincon's Second Amendment retaliation claim must fail. As previously discussed, the video recording before the Court as summary judgment evidence, (Dkt. No. 60), demonstrates that Rincon initially complied with Sergeant Flores's instructions, though he continuously protested the need to comply. (Dkt. No. 60

at 5:18–5:42). Within two seconds of complying with Sergeant Flores's instruction to stand behind the patrol car, Rincon began walking away, crossing back in front of the patrol car and continuing to protest, almost immediately falling back out of compliance. (*Id.* at 5:40–5:50). Officer Martinez then announced himself and arrested Rincon for interference with the live investigation, prompting Rincon to challenge Officer Martinez's seniority and refusing to put his hands behind his back. (*Id.* at 5:40–6:20). Officer Martinez separately concluded that Rincon continued interfering with the investigation of the car accident. (*Id.*). Rincon submitted no evidence suggesting that Officer Martinez's conclusion was one no reasonable officer in his position would have reached. Accordingly, Rincon fails to establish a genuine issue of disputed fact that no reasonable officer in Officer Martinez's position could have believed probable cause existed to make the arrest.

However, even assuming, arguendo, that the summary judgment evidence establishes a genuine issue of disputed fact as to one or more of the elements of a Second Amendment retaliation claim, Rincon has failed to show that Martinez and the other officers' conduct was a violation of a clearly established right. As multiple district courts within the Fifth Circuit have concluded, there is no applicable legal precedent holding that a viable claim exists under Section 1983 for Second Amendment retaliation. *Luna v. City of Round Rock*, No. 1:21-CV-00170-RP-SH, 2022 WL 4491084, at *10 (W.D. Tex. Sept. 26, 2022) (noting that *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) "did not support the creation of a [Section 1983 Second Amendment retaliation] cause of action against an individual officer where the plaintiff challenged that officer's conduct during an investigation"); *Spratlen v. Rainey*, No. 24-CV-00053, 2024 WL 5321350, at *10 (W.D. Tex. Dec. 27, 2024), *R. & R. adopted*, No. 24-CV-00053, 2025 WL 85440 (W.D. Tex. Jan. 13, 2025) ("[T]he Court can find no cases in the Fifth Circuit—and Plaintiff did not point to any—recognizing a § 1983 claim for retaliatory detention under the theory that the plaintiff was engaged in an activity protected under the Second Amendment."); *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 710 n.3 (W.D. Tex. 2015) ("[T]he Court can find no cases in the Fifth Circuit recognizing a viable retaliation claim under the Second Amendment.").

Even assuming, *arguendo*, that the summary judgment evidence demonstrates a viable Section 1983 claim of retaliation for exercising Second Amendment rights, Officer

Martinez is entitled to qualified immunity. Rincon has not pointed to any case law establishing that Officer Martinez's conduct was a violation of a clearly established right under the Second Amendment. As a result, Defendants' motion for summary judgment is **GRANTED** on Claim IV.

## IV. CONCLUSION

For the forgoing reasons, Defendants' Motion for Summary Judgment, (Dkt. No. 58), is **GRANTED in its entirety.** Rincon's claims against Officer Santiago Martinez III, Sergeant Eduardo Flores, Sergeant Victor Vicharelli, and Sergeant Sergio Mendiola are **DISMISSED with prejudice.**

It is so **ORDERED**.

**SIGNED** on September 29, 2026.

John A. Kazen
United States District Judge